Alton Ramsey v. Commissioner.
Ramsey v. Commissioner
Docket No. 29556.
United States Tax Court
1951 Tax Ct. Memo LEXIS 104; 10 T.C.M. (CCH) 854; T.C.M. (RIA) 51269; September 11, 1951
*104 Held: The proof does not sustain petitioner's contention that certain stock became worthless during the taxable year. Accordingly, petitioner may not deduct the cost of the stock in 1945 as a long-term capital loss under section 23 (g) (2), I.R.C.
Vernon L. Stouffer, Esq., for the petitioner. Lyman G. Friedman, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion The respondent determined a deficiency in income tax for the year 1945 amounting to $463.13. The principal question is whether or not stock of the Brownfield Coal Company became worthless in 1945. In his tax return for that year, the petitioner claimed a deduction of $25,000 as a long-term capital loss under section 23 (g) (2) of the Internal Revenue Code. Findings of Fact In March of 1944 Alton Ramsey, the petitioner, purchased stock of the Brownfield Coal Company, an Ohio mining corporation, for $25,000. Ramsey had accountants prepare an audit of the books and records of the corporation. The audit revealed a net loss of $12,356.69 for the year ended April 30, 1944, and the net worth of the corporation at that date was determined *105 to be $60,643.31. Cash on hand amounted to $12.23 and the ratio of current liabilities to current assets was approximately 21 to 9. On January 15, 1945, Ramsey, who desired to dispose of the Brownfield stock, entered into a written agreement to sell 746 of the 750 authorized shares of stock to C. W. Brownfield. The contract provided, in so far as is here pertinent: "THIS AGREEMENT, made and concluded at Columbus, Ohio this 15th day of January, 1945, by and between Alton Ramsey, hereinafter referred to as First Party, C. W. Brownfield, hereinafter referred to as Second Party, and C. W. Brownfield, sole trustee of The Brownfield Trust, hereinafter referred to as Third Party, WITNESSETH: That, "WHEREAS, said C. W. Brownfield is the sole trustee of The Brownfield Trust, and "WHEREAS, the said The Brownfield Trust is the owner in fee and by option of certain coal lands situate in Perry County, just north of Moxahala and contiguous to the New York Central Railroad tracks, now and hereafter to be operated by The Brownfield Coal Co., an Ohio corporation, under the terms and conditions of an existing lease, and "WHEREAS, said First Party is the owner of Seven Hundred Forty-Six (746) *106 shares of the total amount of Seven Hundred Fifty (750) shares outstanding stock in said The Brownfield Coal Co., and "WHEREAS, said First Party is now the holder of secured notes of The Brownfield Coal Co. in the amount of Eighty-Five Hundred ($8500.00) Dollars, and additional obligations of Sixty-Five Hundred ($6500.00) Dollars, and "WHEREAS, said C. W. Brownfield is desirous of purchasing all of said stock from said First Party for Twenty-Five Thousand ($25,000.00) Dollars upon the terms hereinafter set forth, and "WHEREAS, the said First Party is willing to sell and transfer all of his said Seven Hundred Forty-Six (746) shares of stock in said The Brownfield Coal Co. for Twenty-Five Thousand ($25,000.00) Dollars upon said terms, and "WHEREAS, The Brownfield Coal Co. has an existing lease with The Brownfield Trust, Third Party, as per copy attached, and "WHEREAS, there is now an operating deficit of approximately Thirty-Five Thousand ($35,000.00) Dollars, "IT IS THEREFORE MUTUALLY AGREED by and between all of the parties hereto as follows: "1. That said First Party assign, transfer and deliver to said Second Party the said Seven Hundred Forty-Six (746) shares of stock *107 in said The Brownfield Coal Co., and that said stock be transferred to said Second Party on the proper book, books or record, and that new shares of stock be issued to said Second Party, who, in turn, will assign said Certificates of Stock in blank and attach to a copy of this Contract, to be held by John Caren, Attorney, 44 East Broad Street, Columbus, Ohio, in escrow during the pendency and fulfillment of this Contract, and upon the complete determination of same, to be returned to said Second Party; and if said Second Party should be in default under the terms and conditions of this Contract, then, and in that event, to be delivered to said First Party; "2. That the said The Brownfield Coal Co. will execute and deliver to Alton Ramsey, said First Party, a note in the amount of Sixty-Five Hundred ($6500.00) Dollars, with interest at six (6%) per cent per annum, accrued interest to be added to the principal semi-annually and the new principal established, said notes to be secured by a chattel mortgage on equipment owned by The Brownfield Coal Co., it being mutually agreed by and between the parties hereto that said The Brownfield Coal Co. will pay to Alton Ramsey on the notes secured *108 by said mortgage One Hundred Fifty ($150.00) Dollars on the first day of each month after the aforementioned notes totaling Eighty-Five Hundred ($8500.00) Dollars, with accumulated interest, has been paid in full, until said Sixty-Five Hundred ($6500.00) Dollars, together with interest thereon, is paid in full, making a total of Fifteen Thousand ($15,000.00) Dollars principal, plus interest, as provided. Provided, however, that Second Party reserves the right to pay additional amounts on either principal or interest over and above payments as required by this Contract. "3. It is further agreed by and between the parties hereto that if said Second Party fails to make any one of the payment to said First Party on any one of the series of sixty (60) notes secured by the Eighty-Five Hundred ($8500.00) Dollar mortgage, or the Sixty-Five Hundred ($6500.00) Dollar note secured by mortgage, for a period of sixty (60) days, then and in that event, said First Party, or the holder in due course of said note or notes, after giving written notice to said Second Party, or a proper holder under him, and setting forth in said notice the nature and extent of said default, and if said payments or *109 adjustments are not made within ten (10) days after said notice, then, and in that event, said First Party, or holder in due course under him, may, upon his option, declare all of said notes secured by said Eighty-Five Hundred ($8500.00) Dollar and said Sixty-Five Hundred ($6500.00) Dollar mortgages, due and payable without further notice. The failure to exercise an option at any one time will not preclude exercising an option at a different time. * * *
"5. It is further agreed by and between the parties hereto that when the operating deficit of The Brownfield Coal Co. of approximately Thirty-Five Thousand ($35,000.00) Dollars has been made up out of any profits that may accrue to the Company hereafter, not less than Fifty (50%) per cent of the net earnings of the Company will be declared as dividends upon the stock, and that Second Party will pay to Alton Ramsey all of said dividends so declared until Alton Ramsey shall have received a total of Twenty-Five Thousand ($25,000.00) Dollars, or, upon liquidation, Second Party will pay to Alton Ramsey the first Twenty-Five Thousand ($25,000.00) Dollars that shall be payable to Second Party by reason of ownership of said stock, and *110 further, that this amount of Twenty-Five Thousand ($25,000.00) Dollars is separate and distinct and in addition to the Eighty-Five Hundred ($8500.00) Dollars and Sixty-Five Hundred ($6500.00) Dollars as hereinbefore set forth. * * *
"7 (a). It is further agreed that unless and until such default, as set forth in Paragraph No. 3 herein, Second Party shall exercise all voting rights in said stock and/or may exercise all other rights in said stock, subject to this Agreement, except the right of possession." * * *
The profit and loss statement for the eight months, May through December, 1945, showed a total loss of $15,020.73. Total sales aggregated $98,491.77 and the total cost of mining the coal was fixed at $104,701.96. The corporate balance sheet as of December 31, 1945, may be summarized as follows: ASSETS
Current
$ 4,253.90
Fixed
Land development
$ 1,784.20
Mine development
19,746.68
Buildings
11,265.54
Machinery and equipment
53,203.10
Ponies
168.00
Office equipment - mine
386.39
Office equipment - Columbus
915.50
Truck
1,179.85
Tractor
500.00
Railroad siding
3,426.74
Roads
2,816.00
Water system
763.00
Construction in process
1,036.05
Real estate
4,100.00
Furniture and house equipment
149.50
$101,440.55
Less reserve for depreciation
14,328.07
Total Fixed Assets
87,112.48
OTHER ASSETS
1,000.00
Total Assets
$92,366.68
LIABILITIES
Current
$56,212.49
Extended
16,208.72
$72,421.21
Capital stock
$ 73,000.00
Deficit through December, 1945
53,054.83
Net Worth
19,945.17
Total Liabilities and Net Worth
$92,366.38
*111 Cash on hand at the close of 1945 totaled $34.30 and the ratio of current liabilities to current assets was 56 to 4. The economic outlook for the mining industry had changed somewhat during the period between April, 1944, and December, 1945, in that war orders for coal had been discontinued and the market for mining equipment had declined. On February 8, 1946, Ramsey and C. W. Brownfield amended their 1945 contract as follows: * * *
"FIRST: John M. Caren, Escrow Agent under said agreement, to which reference is hereby made, will be directed to assign the 746 shares of stock in The Brownfield Coal Company to C. W. Brownfield. "SECOND: All terms and conditions of said contract are hereby declared null and void, excepting the second, third, and ninth, and tenth provisions regarding notes and mortgages held by the First Party against The Brownfield Coal Company. "THIRD: The terms of the notes and mortgages against The Brownfield Coal Company shall continue in force as provided in said contract. "FOURTH: Second Party promises to pay to First Party all dividends declared and paid upon 376 [initialed by CWB] shares of stock in The Brownfield Coal Company until the total *112 dividends amount to $25,000.00, after which all dividends upon these shares are the property of the Second Party. "FIFTH: As security for performance by the Second Party under this contract, a certificate for 376 [initialed by CWB] shares of stock in The Brownfield Coal Company will be assigned in blank by the Second Party and put in Escrow with Sanborn and Brownfield, Attorneys at Law, at 79 East State Street, Columbus, Ohio. "SIXTH: Upon December 31, 1955, the full $25,000.00 shall become due and payable, less any amounts paid prior to that date. Any balance remaining due may be paid by proportionate shares of the stock in The Brownfield Coal Company held in Escrow, and the Escrow Agent will be instructed to assign said shares to the First Party upon that basis. "SEVENTH: All rights and privileges whatsoever to said shares in Escrow shall belong to Second Party during the time of this agreement, except as herein provided." * * *
Intermittent mining operations were carried on until 1950. The corporate charter was canceled on October 15, 1949, upon certificate of the Ohio Department of Taxation. The stock was returned to Ramsey in 1950. For the year ended April 30, 1947, the *113 corporation showed a net operating income of $1,977.73. Net income for the year ended April 30, 1948, was reported by the company for Federal income tax purposes as $19,523.74. The petitioner claimed a long-term capital loss of $25,000 in his income tax return for the year 1945 due to alleged worthlessness of the stock in question. Respondent disallowed such loss. Opinion VAN FOSSAN, Judge: In the instant case the burden of proving worthlessness of the stock rested on the petitioner. On the record before us we do not believe he has successfully carried that burden. Albeit the corporation had suffered operating losses which impaired its capital structure, at the end of the taxable year the losses had not wiped out the equity of the stockholders. An examination of its financial statements shows that if the corporation had been liquidated at that time there was some value adhering to the stock. Its book assets exceeded its liabilities. The fact that no dividends were earned or paid does not require a contrary holding. The most that can be said that there was a shrinkage in value during the taxable year. Petitioner also had rights under the contract which may have given value to *114 the stock. Moreover, the parties entered into a further contract in 1946 which would indicate that the parties themselves thought there was value lurking in the stock; otherwise, it was a futile gesture. This supplemental contract dealt with dividend payments and clearly supports the view that the parties thereto contemplated further operation with possibility of profit. We hold that the record before us does not sustain petitioner's contention that the stock became worthless during the taxable year. Decision will be entered for the respondent.